1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MEGHAN RIDDELL and JONATHAN RIDDELL,

                           Plaintiffs,

        v.

SB&C, LTD a/k/a SKAGIT BONDED COLLECTORS, LLC,

                           Defendant.

CASE NO. 21-CV-01134-LK

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on the motion for summary judgment by Defendant Skagit Bonded & Collectors, LLC ("SBC"), Dkt. No. 17, and the motion for partial summary judgment by Plaintiffs Meghan and Jonathan Riddell (the "Riddells"). Dkt. No. 18. The Riddells seek summary judgment on liability but not damages. Dkt. No. 18 at 3. For the reasons set forth below, the Court grants in part and denies in part the Riddells' motion for partial summary judgment and grants in part and denies in part SBC's motion for summary judgment.

## I.   BACKGROUND

This action stems from a bill for medical treatment Jonathan Riddell received from Skagit Regional Health for services provided on July 25, 2020. Dkt. No. 17-2 at 11. The agreement between Mr. Riddell and Skagit Regional Health contained the following clause:

> **FINANCIAL AGREEMENT**: I understand that I am financially obligated to pay any balances on my account, and this obligates me and my marital community, if applicable. Should this account be referred to an attorney for collection, I understand I will pay reasonable attorney's fees and collection expenses. All delinquent accounts bear interest at the rate of 0.75% per month.

*Id.* at 12. The Riddells did not pay the bill and it was assigned to SBC, a debt collector, on January 19, 2021. *Id.* at 1. SBC called Mr. Riddell on January 28, 2021 to discuss a "personal business matter," but Mr. Riddell said that he was at work and hung up before the discussion could go any further. *Id.* at 45. On March 17, 2021, SBC mailed a collection letter to the Riddells and did not receive a response. *Id.* at 3, 16–17.

SBC then filed suit in Cascade District Court, Snohomish County, Washington, on April 22, 2021. Dkt. No. 17-2 at 19. In its complaint, SBC sought the principal amount of $2,849 as well as $64.11 in interest accrued prior to assignment and $63.70 in interest accrued since assignment, for a total of $2,976.81. *Id.* at 21. The Riddells were served on May 20, 2021. *Id.* at 35.

The next day, Ms. Riddell called SBC and informed it that she was "hoping to set up a payment plan." *Id.* at 46. SBC told her that her outstanding balance was now $3,621.59. *Id.* Asked why the amount was different from what was sought in the complaint, SBC explained that the difference was made up of court costs and attorney's fees. *Id.* at 46–47. At this point, SBC said it could "go over [her] options":

> We have two. You can do a legal settlement where you settle out the lawsuit and it is dismissed. You have 20 days from the day you guys got the served paperwork, but that does have to be paid in a lump sum with a signed legal settlement.
>
> If you cannot do that, you can do a consent for entry of judgment. You and Jonathan

would have to make an appointment, come into the office, sign a consent for entry of judgment. The judgment would be placed against both of you, and then you would be able to do payment arrangements based off of household income.

*Id.* at 47. When Ms. Riddell asked whether such a judgment would go on the Riddells' credit reports, SBC told her that it would. *Id.* Ms. Riddell responded that she would be unable to pay the whole amount right away, prompting SBC to suggest a potential "payment arrangement" and inquire into the Riddells' place of employment, salary, address, mortgage payment, and other information. *Id.* at 47–50. Ms. Riddell shared that Mr. Riddell worked full-time for $42 an hour, and that she worked full-time for $26 an hour. *Id.* at 48–49. SBC explained that it "require[d] 20 percent of financial household income," and that based just on Mr. Riddell's information, they would be "looking at $1,100 a month," which is "what [SBC] would get if [it] proceeded into garnishment at this point." *Id.* at 50–51. Ms. Riddell responded that she did not "have a thousand dollars a month" to give SBC and ended the call. *Id.* at 51.

On May 25, 2021, Ms. Riddell made a second call to SBC, this time offering to pay the debt in full. *Id.* at 52. She explained that the Riddells had "got[ten] a loan to borrow some money to pay this off," and that she "wanted to see if [she] could set up payment for June 15th," even though that fell "a little bit past our 20 day reply period." *Id.* SBC responded that "[u]nfortunately, with a legal settlement, it would have to actually be done by June 4th to be able to do a settlement instead of it going to judgment. . . . [O]nce judgment's entered, you can still pay the balance in full." *Id.* at 52, 54. Ms. Riddell explained that she didn't "want a judgment on [her] credit." *Id.* at 54–55. SBC responded: "Then that settlement would have to be done by June 4th." *Id.* at 55. Ms. Riddell answered: "I cannot believe that you will not make an extension for 10 days, when I'm telling you I'm going to pay the whole balance." *Id.* SBC responded: "You can still pay the balance. . . . You can still pay the full balance at that point. We're not stopping you from paying the balance." *Id.* After delivering a few unpleasantries, Ms. Riddell ended the call. *Id.* at 56. Shortly

1  thereafter, on May 27, 2021, the Riddells answered SBC's complaint, disputing the debt. *Id.* at 23–

2  24.

3          On June 24, 2021, Ms. Riddell called SBC again, stating that she wanted "to see if I can

4  settle a debt." *Id.* at 57. SBC told her that she "would have to sign a legal settlement that states that

5  we're going to settle out and dismiss it." *Id.* Ms. Riddell agreed to receive the settlement paperwork

6  by email and provide full payment the next day, discussing some logistical details before ending

7  the call. *Id.* at 58–60. The settlement agreement SBC sent began with a provision stating that

8  
9  > Defendant [i.e., the Riddells] acknowledges that if the Suit continues, SB&C will
> prevail and obtain a judgment for the balance prayed for in the Summons and
> Complaint, including costs and any reasonable attorney's fees which may be
> authorized by contract or by statute, and which the court may award in its
10  > reasonable discretion.

11  *Id.* at 27. The settlement further provided that the Riddells would pay $3,646.17 to SBC "in full

12  and final settlement of the Suit." *Id.* The release provision included "a release by SB&C of those

13  claims by SB&C against Defendant that were expressly set forth in the Suit[.]" *Id.* at 28. An

14  attachment to the settlement agreement explained "how the [$3,646.17] balance was arrived at,"

15  and identified $2,849 in principal, $64.11 in interest prior to assignment, $110.06 in interest

16  accrued since assignment, $123 in court costs, and $500 in "attorney fees authorized by the court

17  or by statute." *Id.* at 29 (capitalization altered). The Riddells never signed the settlement agreement

18  and simply mailed SBC a check for the full amount.[1] *See id.* at 7; Dkt. No. 18 at 8 (stating that the

19  Riddells declined to sign the settlement agreement because it was "confusing"); Dkt. No. 18-1 at

20  5 (stating that the Riddells declined to sign the settlement agreement because they did not think it

21  "applied to [their] situation"). SBC received the payment on June 28, 2021 and proceeded to settle

22  the account and mark it for credit bureau removal. Dkt. No. 17-2 at 7.

23  
24  ---

[1] The settlement agreement listed a payoff amount of $3,646.17, but the Riddells claim that they paid $3,645.47, which matches the amount communicated to Ms. Riddell by SBC on the June 24, 2021 phone call. *See* Dkt. No. 18-1 at 5; Dkt. No. 17-2 at 58.

On July 15, 2021, Ms. Riddell called SBC once again. Dkt. No. 18-3 at 5. This time, she expressed concern because she had "not received a dismissal of the lawsuit." *Id.* SBC explained that it "just allow[s] the case to get dismissed for want of prosecution and because otherwise it would be more money because we'd have to pay to file a dismissal." *Id.* Ms. Riddell protested: "You need to dismiss the lawsuit. . . . It's been two weeks." *Id.* at 5–6. After SBC reiterated that it "[doesn't] file dismissals," Ms. Riddell said that she would call her lawyer, and hung up. *Id.* at 6. The next day, SBC mailed out a motion for dismissal. Dkt. No. 17-2 at 7; *id.* at 41–42. However, SBC sought (and the court entered) a dismissal *without* prejudice, and the Riddells claim that SBC never served them with the dismissal. *Id.* at 41–42; Dkt. No. 18-1 at 6; *see SB&C, Ltd. v. Braden*, No. C21-00591, at 1 (Snohomish Cnty. Dist. Ct., Cascade Div., Sept. 3, 2021).

The Riddells filed a complaint in King County Superior Court on August 16, 2021, which SBC removed to this Court on August 23, 2021. Dkt. No. 1 at 2; Dkt. No. 1-1 at 1. The Riddells allege that SBC's conduct violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, Washington's Collection Agency Act ("WCAA"), Wash. Rev. Code §§ 19.16.100–19.16.960, and Washington's Consumer Protection Act ("CPA"), *id.* §§ 19.86.010–19.86.920. Dkt. No. 1-1 at 6–9. Specifically, the Riddells allege that SBC violated the FDCPA because it "used false, deceptive or misleading representations or means in connection with the collection of an alleged debt" in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10), and because its "refusal to dismiss the collection lawsuit despite having received payment in full is an unfair or unconscionable act" in violation of 15 U.S.C. § 1692f. Dkt. No. 1-1 at 6–7. The Riddells also allege that SBC violated the WCAA, including Sections 19.16.250(16) and (21) of the Revised Code of Washington, violations of which are per se violations of the CPA.[2]

---

[2] The Riddells have withdrawn their claim under Section 19.16.250(22) of the Revised Code of Washington. Dkt. No. 18 at 22–23.

Dkt. No. 1-1 at 7–9. Specifically, the Riddells argue that SBC violated the WCAA by attempting to collect amounts not owed and threatening to take actions that it could not legally take at the time the threats were made. *See id.*

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Court will, however, enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried its burden under Rule 56(c), "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Metaphysical doubt is insufficient, *id.* at 586, as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89.

Where, as here, the Court is faced with cross-motions for summary judgment involving the same claims, the Court must consider each motion on its own merits and determine for each side whether summary judgment is appropriate. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside*

1    *Two*, 249 F.3d 1132, 1135–36 (9th Cir. 2001).

2                              **III.    DISCUSSION**

3        The Riddells move for summary judgment as to liability on all of their claims under the

4    FDCPA, WCAA, and CPA. The Riddells premise liability on five distinct grounds:

5        (1)  SBC improperly sought to collect $500 in attorney's fees. It falsely represented that

6             the $500 fee was part of the Riddells' balance. Dkt. No. 18 at 18. It also falsely

7             represented in its proposed settlement agreement that the $500 fee was "authorized by

8             the court or by statute" when in fact it sought an unliquidated amount of "reasonable

9             attorney's fees" in excess of what was permitted by statute and before the amount of

10            "reasonable" fees had been determined by any court. *Id.* at 12–14, 18–19.

11       (2)  SBC misrepresented the prospect of a civil judgment. It falsely represented the options

12            available to the Riddells in order to coerce them into compliance, including by

13            representing that they only had two options: either settle within 20 days of service by

14            signing a settlement agreement and paying in full, or consent to entry of judgment and

15            accept garnishment at a rate based on their household income. *Id.* at 15–18. Relatedly,

16            the Riddells allege that SBC misrepresented that a judgment could only be avoided if

17            they paid in full by June 4 (on the May 25 phone call), and that the potential judgment

18            would appear on their credit reports. *Id.* at 15–16.

19       (3)  SBC misrepresented what it would be able to obtain in garnishment if a judgment was

20            entered against the Riddells, stating that it would be able to garnish 20 percent of

21            "financial household income" when the applicable statutes only provide for

22            garnishment of 20 percent of disposable earnings. *Id.* at 5, 16 n.12.

23       (4)  SBC attempted to get the Riddells to sign a settlement agreement that was a "sham

24            'agreement'" because it lacked consideration: under the terms of the agreement, SBC

would receive payment in full and a release of claims while giving up nothing. *Id.* at 16–17.

(5)  SBC told the Riddells that it would not dismiss the lawsuit even after they had paid in full, and even when SBC moved for dismissal it did so improperly by seeking dismissal without prejudice and by failing to serve the Riddells. *Id.* at 18.

For its part, SBC moves for summary judgment on all claims alleged by the Riddells. It argues (1) that it never sought amounts of principal and interest greater than were owed, Dkt. No. 17 at 7–8; (2) that the recovery of "reasonable attorney's fees" was authorized by Mr. Riddell's contract with Skagit Regional Health and it was permitted to recover those fees without prior court approval, *id.* at 8–10; (3) that the amounts it claimed it could garnish were consistent with applicable statutes and with the information Ms. Riddell provided, *id.* at 12–13; (4) that termination of the dispute was sufficient consideration for the proposed settlement agreement, *id.* at 11, 13–14; and (5) that its initial refusal to dismiss its lawsuit was not "unfair" or "unconscionable" under 15 U.S.C. § 1692f, *id.* at 15–16.

The Court concludes that summary judgment as to liability should be granted to the Riddells for their claims that SBC's statements on the May 21, 2021 and May 25, 2021 phone calls violated the CPA, Wash Rev. Code § 19.16.250(16) and (21), and the FDCPA, 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f.[3] The Court grants summary judgment to SBC on all other claims.

## A.    Scope of the Record

After the Riddells filed their reply brief, Dkt. No. 24, SBC filed a surreply, Dkt. No. 25, seeking to strike or disregard statements in the Riddells' reply brief, Dkt. No. 24. The surreply is

---

[3] The parties do not dispute that SBC is a "debt collector" under 15 U.S.C. § 1692a(6), which is a prerequisite to liability under the FDCPA. Dkt. No. 18 at 12; Dkt. No. 10 at 1–2.

procedurally improper because SBC did not file a notice of intent to file a surreply as required by Local Civil Rule 7(g)(1), and the Court declines to consider it.

SBC also filed a declaration attaching the Riddells' deposition transcripts nearly five months after the close of summary judgment briefing. Dkt. Nos. 28, 28-1, 28-2. This too is procedurally improper. "Local Civil Rule 7 requires that any argument in support of a motion 'shall not be made in a separate document but shall be submitted as part of the motion itself,'" and "where a motion, opposition, or reply requires facts beyond what already appears in the record, the movant must file that that evidence with the underlying motion." *Straw v. Avvo, Inc.*, No. C20-0294-JLR, 2020 WL 5066939, at *2 (W.D. Wash. Aug. 27, 2020) (quoting LCR 7(b)). Thus, "[a]bsent extenuating circumstances (which are not present here), the time for submitting a summary judgment record is contemporaneously with the filing of the principal brief, not after the non-movant has already filed a response and briefing has closed." *Sideridraulic Sys. SpA v. Briese Schiffahrts GmbH & Co. KG*, No. CIV.A. 10-0715-WS-M, 2011 WL 3204521, at *2 (S.D. Ala. July 26, 2011). Notably, SBC agreed to this briefing schedule, Dkt. No. 20, and did not seek a continuance of summary judgment briefing under Rule 56(d) or any other procedurally appropriate mechanism. *See* Fed. R. Civ. P. 56(d). Accordingly, the Court does not consider its declaration or the attached deposition transcripts.

**B.     Whether SBC Is Liable Under the FDCPA**

    1.     <u>The Requirements of the FDCPA</u>

The FDCPA is a "broad remedial statute" designed to "'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)). The FDCPA "comprehensively

regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices." *Id.* at 1060–61.

Because the FDCPA is a strict liability statute, even an unintentional act can result in a violation. *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175–76 (9th Cir. 2006) (unintentional misrepresentation violates section 1692e); *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008) (applying strict liability to a section 1692f claim). Moreover, one action can give rise to violations of multiple sections of the FDCPA, although "the fact that numerous violations of the FDCPA are predicated upon one set of circumstances *should* be considered . . . during the calculation of damages." *Clark*, 460 F.3d at 1178 (emphasis in original). Courts liberally construe the FDCPA in favor of the consumer. *Id.* at 1176.

To determine if a violation of the FDCPA occurred, the debt collector's actions are evaluated under the "least sophisticated debtor" standard. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011). The standard is objective, and asks whether "the least sophisticated debtor would likely be misled" by the debt collector's conduct. *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988). The least sophisticated debtor standard "protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking, and the credulous." *Clark*, 460 F.3d at 1171 (citation and quotation omitted). Whether an FDCPA violation has occurred is a question of law. *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

The Riddells allege that SBC violated Sections 1692e(2), (5), (10), and 1692f of the FDCPA. 15 U.S.C. § 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." It goes on to specify examples of conduct that violates Section 1692e, including:

(2) The false representation of—

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 10

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. . . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," and section 1692f(1) specifically prohibits the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f, 1692f(1).

2.     SBC's Attempts to Recover Attorney's Fees

The Riddells argue that SBC violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), and 1692f by representing that the $500 in attorney's fees it sought were part of the Riddells' "balance" and that the fees were authorized by a court or by statute. Dkt. No. 18 at 12–14, 18–19. The Court agrees with respect to the May 21, 2021 and May 25, 2021 phone calls. Dkt. No. 17-2 at 46–56. However, the June 24, 2021 call and letter, *id.* at 26–29, 57–60, did not violate the FDCPA.

In Ms. Riddell's May 21 call to SBC, she was told that she had "an outstanding balance of $3,621.59." *Id.* at 46. When she asked why the amount was different from the approximately $2,900 included in "the summons [she] got," SBC explained that there were "court costs and attorney's fees, money that we had to spend to file the lawsuit." *Id.* at 46–47. In the parties' May 25, 2021 call, SBC again represented the "total balance" as $3,631.42, without explaining what part of that "balance" was attorney's fees. *Id.* at 55. It is undisputed that Mr. Riddell's contract with Skagit Regional Health—which was later assigned to SBC—authorized reasonable attorney's fees. The contract provides that in the event the account is "referred to an attorney for collection," Mr. Riddell would "pay reasonable attorney's fees and collection expenses." *Id.* at 12. But "[e]ven

1  if attorneys' fees are authorized by contract, as in this case, and even if the fees are reasonable,

2  debt collectors must still clearly and fairly communicate information about the amount of the debt

3  to debtors," including "how the total amount due was determined if the demand for payment

4  includes add-on expenses like attorneys' fees or collection costs." *Fields v. Wilber L. Firm, P.C.*,

5  383 F.3d 562, 565 (7th Cir. 2004). Failing to explain that lump sum could mislead the least

6  sophisticated debtor, and on the facts of this case in particular, the failure to pinpoint the amount

7  of attorney's fees likely would mislead such a debtor because it "g[i]ve[s] a false impression of

8  the character of the debt." *Id.* at 566. "It is unfair to consumers under the FDCPA to hide the true

9  character of the debt, thereby impairing their ability to knowledgeably assess the validity of the

10  debt." *Id.* (noting that "[o]ne simple way to comply with § 1692e and § 1692f in this regard would

11  be to itemize the various charges that comprise the total amount of the debt."). And the validity of

12  SBC's $500 charge for attorney's fees is called into question by its own evidentiary submissions.

13  SBC's CEO explains in a declaration that SBC "would not have reviewed the [Riddells']

14  account until th[e] 'action date'" of June 9, 2021, and "[i]f no responsive documents had been

15  provided by that time, [SBC would] then prepare to move for default." Dkt. No. 23 at 3. Preparing

16  and filing the motion and order for default and supporting affidavit takes an hour of legal staff

17  time, and review of those documents takes a quarter of an hour of attorney time. Dkt. No. 17-2 at

18  38. This time translates to $120 of the $500 fee SBC told Ms. Riddell it "had to spend to file the

19  lawsuit." *Id.* at 38, 47. But SBC had not done that work by May 21. In fact, it never did that work.

20  Dkt. No. 22 at 12 ("The Riddells filed an answer on May 27, 2021, and therefore SB&C no longer

21  had cause or reason to move forward with a default."). It is axiomatic that an attorney cannot

22  charge for work she has not done. SBC's statements on the May 21, 2021 and May 25, 2021 calls

23  falsely represented the character, amount, and legal status of the debt, and it used that false

24  representation to attempt to collect the debt in violation of Section 1692e(2) and (10). By seeking

fees for work it did not do as part of the "outstanding balance" or "total balance" as of May 21 and May 25, SBC also violated Section 1692f.

But the same problems do not plague the June 24, 2021 call and written correspondence. On the June 24 call, Ms. Riddell's inquiry was to "see if [she could] settle a debt," and SBC made clear that the "full balance" it sought was pursued as part of a "legal settlement." Dkt. No. 17-2 at 57–58. In the proposed settlement agreement SBC followed up with, the cover letter explained that

> a detailed breakdown of the amounts that [SBC] will be asking the court to award judgment for is attached. This breakdown includes court costs and attorney fees authorized by statute, *which are not yet reduced to judgment*, but Plaintiff would be asking the Court to award judgment for if this matter proceeds in Court.

*Id.* at 26 (emphasis added). The recitals of the proposed settlement agreement include the following: "Defendant acknowledges that *if the Suit continues*, SB&C will prevail and obtain a judgment for the balance prayed for in the Summons and Complaint, including costs and any reasonable attorney's fees *which may be authorized by contract or by statute, and which the court may award in its reasonable discretion*." *Id.* at 27 (emphasis added). In context, SBC clearly communicated that the balance it was seeking included a $500 attorney's fees charge that it sought in litigation and as part of a settlement of that litigation, not because it was part of the Riddells' principal or interest. It also clearly communicated that the amount was "not yet reduced to judgment," but was based on what SBC "would be asking the Court to award" if it prevailed. *Id.* at 26. And given that the Riddells had contested the debt in their answer, *id.* at 23, it was not unreasonable for SBC to expect reasonable attorney's fees to amount to $500 by the time it prevailed.

The Riddells argue that "reasonable attorney's fees" are an unliquidated amount and must be determined by a court, and that therefore "demanding exactly that amount (as being presently owed, without question) is inaccurate." Dkt. No. 18 at 13. But as explained above, the Riddells

have failed to show that SBC demanded attorney's fees as "being presently owed, without question" in the June 24 correspondence; SBC demanded attorney's fees as part of a settlement of ongoing litigation in which it was already seeking that amount from a court should it eventually prevail.

SBC was entitled to seek reasonable attorney's fees as part of a settlement even in advance of court approval, and the Riddells cite no authority indicating otherwise. The Riddells cite *Flint v. Hart*, Dkt. No. 18 at 13, but that case is inapposite because it addresses attorney fees authorized by equitable grounds rather than by a pre-existing contract between the parties. 917 P.2d 590, 598 (Wash. Ct. App. 1996). Nor does *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.* help their argument: the Court agrees that the determination of reasonable attorney's fees is a "factual inquiry" when the issue is being decided by a court, 858 P.2d 1054, 1073 (Wash. 1993), but that has no bearing on whether SBC was permitted to seek attorney's fees in settlement.

In their response to SBC's summary judgment motion and reply in support of their own motion, Dkt. No. 19 at 2–3 & n.2, Dkt. No. 24 at 4, the Riddells unconvincingly analogize to several other cases in which courts found that a debt collector falsely represented the status or amount of a debt by representing that attorney's fees included in the debt had already been approved by a court. *McNair v. Maxwell & Morgan PC*, 893 F.3d 680, 684 (9th Cir. 2018); *Jason v. Maxwell & Morgan PC*, No. CV-16-02894-PHX-SRB, 2018 WL 6181178, at *5 (D. Ariz. July 17, 2018); *Costa v. Maxwell & Morgan PC*, No. CV-15-00315-PHX-NVW, 2015 WL 3490115, *6 (D. Ariz. Jun. 3, 2015). The holdings of these cases are inapplicable to the facts of the June 24, 2021 communications, in which SBC quite clearly explained that the amount it sought was "not yet reduced to judgment." Dkt. No. 17-2 at 26. In *McNair*, the debt collector had already obtained a stipulated judgment against the debtor and the misrepresentation occurred in a post-judgment writ of special execution where the debt collector sought an excess amount of "accruing" attorney's

fees that had not yet been approved by any court. *McNair*, 893 F.3d at 684. In the writ, the debt collector represented that the accruing attorney's fees were "now at the date of this Writ due" even though Arizona law provides that "requests for post-judgment attorneys' fees must be made in a motion to the court." *Id.* Similarly, in *Jason*, a judgment had already been entered and the debt collector failed to obtain court approval before seeking attorney's fees in violation of a judgment that *explicitly required* that attorney's fees be approved by the court. 2018 WL 6181178, at *5. The relevant facts of *Costa* are virtually the same as in *Jason*: the debt collector in that case obtained default judgment against a debtor but went on to collect additional attorney's fees beyond those granted in the judgment. *Costa*, 2015 WL 3490115, at *6.

None of these cases establishes that SBC was prohibited from seeking reasonable attorney's fees as part of a settlement worked out in *advance* of any judgment and where it was not purporting to execute on a judgment. The better view is that "when a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter." *Fields*, 383 F.3d at 565. Other courts have found, and this Court agrees, that it would be unwise

> to endorse an approach that would require every debt collector under the FDCPA to go to court every time it sought to enforce a provision in a payment agreement signed by the debtor that allows reimbursement of attorneys' fees and collection costs. Plainly stated, the statute does not require such an extraordinary result.

*Id.* at 564; *see also Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 598 (7th Cir. 2004); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 308 (2d Cir. 2003) ("We find no support for plaintiff's position that an attorney violates the FDCPA by attempting to collect a facially reasonable fee—consistent with the terms of the underlying agreement[.]"); *Shapiro v. Riddle & Assocs., P.C.*, 351 F.3d 63, 64 (2d Cir. 2003).

Nor is the Riddells' argument supported by Washington statutes on attorney's fees: in light

of the fact that SBC was describing the amounts it was seeking from the court should it prevail in litigation, SBC's representation that it sought "court costs and attorney fees *authorized by statute*, which are not yet reduced to judgment" is not materially false or misleading. *See* Dkt. No. 17-2 at 26 (emphasis added). Section 4.84.330 of the Revised Code of Washington authorizes an award of reasonable attorney's fees to the "prevailing party" where such fees are provided for by contract. Wash. Rev. Code § 4.84.330 (defining "prevailing party" as "the party in whose favor final judgment is rendered"); *see also Wachovia SBA Lending v. Kraft*, 158 P.3d 1271, 1274 (Wash. Ct. App. 2007) ("For RCW 4.84.330 to apply: (1) the action must be 'on a contract or lease,' (2) the contract must contain a unilateral attorney fee or cost provision, and (3) there must be a 'prevailing party.'"). Washington law also provides for the payment of certain costs to "the prevailing party upon the judgment" in a civil action, including statutory attorney's fees of $200. Wash. Rev. Code §§ 4.84.010(6); 4.84.080(1).[4] The Riddells emphasize that the $500 SBC sought exceeded the statutory attorney's fee award of $200, Dkt. No. 18 at 13, but SBC would have been entitled to reasonable attorney's fees under Section 4.84.330 of the Revised Code of Washington if it was the prevailing party upon judgment, and it did not represent otherwise. Dkt. No. 17-2 at 26 (clarifying that the attorney's fees sought were "not yet reduced to judgment").

SBC did make one questionable representation: in the document itemizing the amount it sought in its proposed settlement agreement, it listed the $500 attorney's fee under a code ("ATTYS") that was defined in a key further below on the same page as being for "attorney fees authorized by the court or by statute." Dkt. No. 17-2 at 29. This is potentially confusing to the least sophisticated debtor, since it could imply that the fees are *already* authorized. However, any

---

[4] Washington law provides that a plaintiff may be considered the "prevailing party" in certain circumstances even prior to the entry of judgment, such that it would be entitled to a statutory award: in a "district court civil action for the recovery of money only, [a] plaintiff will be considered the prevailing party for the purpose of awarding costs, including a statutory attorney fee, if . . . [t]he defendant makes full or partial payment of the amounts sought by the plaintiff prior to the entry of judgment." Wash. Rev. Code § 12.20.060(2)(a); *see also id.* § 4.84.015.

confusion that might result is mitigated by SBC's cover letter for the same document, which states that the document is "a detailed breakdown of the amounts that Plaintiff *will be* asking the court to award judgment for is attached," *id.* at 26 (emphasis added), and by the settlement agreement itself, which explains that "the court may award in its reasonable discretion" the amount sought for attorney's fees, *id.* at 27. Even an unsophisticated debtor that "has a basic level of understanding and willingness to read with care" would understand that SBC was seeking those amounts in settlement because it hoped it could get them from the court, not because they formed part of the underlying balance. *Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d 1190, 1196 (9th Cir. 2019) (cleaned up).

   3.   SBC's Representations Regarding the Riddells' Options

The Riddells argue that SBC falsely represented that they had only two options: either settle within 20 days of service by signing a settlement agreement and paying in full, or consent to entry of judgment and accept garnishment at a rate based on their household income. Dkt. No. 18 at 15–18. The Riddells further allege that SBC misrepresented that a judgment could only be avoided if they paid in full by June 4, and that the potential judgment would appear on their credit reports. *Id.* at 15–16. As the Riddells put it, although SBC's "false dichotomy was confusing, the thrust of the message was clear—pay within 20 days or face a judgment and adverse credit reporting." *Id.* at 4.

   Indeed, at the outset of the May 21 call, SBC represented to Ms. Riddell that she had "two" options. Dkt. No. 17-2 at 47. However, after she rejected those options it discussed a potential "payment arrangement," and after she indicated her dissatisfaction with the offered arrangement it explained that she could "file an answer to the lawsuit that was served to [her]." *Id.* at 50–51. But none of the options that SBC identified included the option of extinguishing the debt by paying it in full *without* executing a settlement agreement. The least sophisticated debtor would be likely

to come away from the conversation with the impression that this option was unavailable. *Tarrant v. Portfolio Recovery Assocs., LLC*, No. 3:11-00664, 2011 WL 5042057, at *4 (M.D. Tenn. Oct. 24, 2011) (finding that plaintiff had stated claims under Sections 1692e and e(10) because "the least sophisticated consumer could conclude that the only payment options were the specified options in the Defendant's letter.").

In the next call on May 25, SBC ratcheted up the pressure further by telling Ms. Riddell that she would not be able to pay the debt unless she "[did] a settlement" by June 4, and implied again that the only alternative would be for the case to "go[] to judgment." Dkt. No. 17-2 at 52. The June 4 date had no legal significance: the deadline for the Riddells to answer or otherwise appear was 20 days after service, which was June 9, 2021. Wash. Sup. Ct. Civ. R. 12(a)(1). SBC admits that the employee was mistaken and incorrectly used the June 4 date instead of June 9. Dkt. No. 22 at 13. And, as the Riddells point out, the earliest that SBC could have obtained a default judgment was June 18, 2021. Dkt. No. 24 at 5 (citing Wash. Civ. R. Cts. Ltd. Jurisdiction 6(d), (e)). SBC argues that the misrepresentation of the date was immaterial because it would not "frustrate a consumer's ability to intelligently choose his or her response." *Id.* (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)). The Court disagrees. By presenting the date by which the Riddells supposedly had to pay in full (via settlement) in order to avoid a judgment as being even more imminent than it actually was, SBC's misrepresentation would be likely to create a false sense of urgency in a debtor, potentially prompting the debtor to take actions they otherwise would not or inducing resignation about the inevitability of judgment.[5] *See Newman v. Checkrite California, Inc.*, 912 F. Supp. 1354, 1380 (E.D. Cal. 1995), *superseded by*

---

[5] SBC also argues that the action the Riddells ultimately took—filing an answer to the complaint—is one they took "well in advance of the June 4th date" and thus one they would have taken if they had been told the correct June 9 date anyway. Dkt. No. 22 at 14. But liability under the FDCPA is not predicated on whether a debtor was *actually* frustrated in intelligently choosing a response; rather, it is an objective test that turns on whether a hypothetical least sophisticated debtor would likely be materially misled or deceived. *Gonzales*, 660 F.3d at 1061.

*statute on other grounds as stated in Imperial Merch. Servs., Inc. v. Hunt*, 212 P.3d 736, 742–43 (Cal. 2009) (finding misrepresentation under the FDCPA where defendant falsely implied that they were "in a position to file suit 'NOW'"); *Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1102 (D. Or. 2000) (finding misrepresentation actionable under the FDCPA where "defendants' statement was a threat to seize or garnish [plaintiffs'] . . . assets within five days" even though the action could not be taken in that time).

SBC falsely implied the inevitability—and imminency—of a judgment if the Riddells did not settle within the time to answer the complaint. SBC was within its right to state the conditions on which it would agree to settle the case. But the least sophisticated debtor could reasonably interpret the binary alternatives it presented—settle by the date it offered or accept that the case will "go[] to judgment"—as implying that something would happen on that date that would prevent them from later paying their debt or otherwise settling the case. Dkt. No. 17-2 at 52. In fact, the Riddells did file an answer, preventing the entry of a default judgment, and paid the amount they owed without signing the settlement SBC offered. Dkt. No. 18-1 at 4–5. It is true that, as SBC notes, it did mention near the end of the May 21 call that the Riddells could "file an answer." *See* Dkt. No. 22 at 3 ("The Riddells' representation that they were only provided with two options is demonstrably false. They were provided with the option to file an Answer, and they did indeed file an Answer."). But that statement contradicted its statement at the outset of the call that they only had "two" options. Dkt. No. 17-2 at 47, 51. And it still did not inform them that they had the option of paying in full without executing a settlement agreement. *See Gonzales*, 660 F.3d at 1062 ("[I]t is well established that 'a debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) (alteration omitted)); *Clark*, 460 F.3d at 1171–72 ("[I]t does not seem 'unfair to require that one who deliberately goes perilously close to an area of proscribed

conduct shall take the risk that he may cross the line.'" (quoting *FTC v. Colgate–Palmolive Co.*, 380 U.S. 374, 393 (1965)). Instead, SBC presented settlement as the only option accompanying payment in full. *See, e.g.*, Dkt. No. 17-2 at 47 ("You have 20 days from the day you guys got served paperwork, but that does have to be paid in a lump sum with a signed legal settlement.").

The Riddells also argue that SBC "misrepresented that the judgment would affect [Ms. Riddell's] credit reports, which had not been the case for several years and is specifically not true." Dkt. No. 18 at 15. In support, the Riddells cite a single source: an article from the Consumer Financial Protection Bureau website summarizing its quarterly consumer credit trends report from December 2019. *See* Jasper Clarkberg, *A new retrospective on the removal of public records*, Consumer Financial Protection Bureau (Dec. 10, 2019), https://www.consumerfinance.gov/about-us/blog/new-retrospective-on-removing-public-records/. The article states that "new reporting standards for public records resulted in the removal of all civil judgments and almost half of tax liens from consumer credit reports in July 2017." *Id.* The "new reporting standards" came from the National Consumer Assistance Plan ("NCAP"), a plan adopted by the three nationwide consumer reporting agencies ("NCRAs") in response to a 2015 settlement of Fair Credit Reporting Act litigation with over 30 states. Consumer Financial Protection Bureau, *Quarterly Consumer Credit Trends: Public records, credit scores, and credit performance*, at 2 (December 2019), https://files.consumerfinance.gov/f/documents/cfpb_quarterly-consumer-credit-trends_public-records-credit-scores-performance_2019-12.pdf. The NCAP provided that "civil public records—tax liens, civil judgments, and bankruptcies—could only be included on a credit report if they were refreshed by the NCRA at least every 90 days and contained enough personally identifying information to match the right consumer's credit record." *Id.* The Consumer Financial Protection Bureau ("CFPB") also reports that "[i]t is possible that tax liens and civil judgments could be

reported in the future if that reporting complies with the terms of the NCRA settlement, however there have been no signs of a return so far." *Id.* at 3.

The CFPB report does not establish definitively that civil judgments will never legally be reported on a consumer's credit report, since the NCAP criteria permit such reporting under certain circumstances and the report states that it is "possible that . . . civil judgments could be reported in the future if that reporting complies with the terms of the NCRA settlement." *Id.* However, the report does establish that the NCRAs have adopted policies that resulted in the de facto elimination of all civil judgment reporting. *See also* James J. Brown, *Judgment Enforcement* §14.19 (Aspen Publishers 3d ed. 2022-2 Supplement) ("Since most courts don't allow SSN and DOB information to be publicly disclosed (in fact, most states have rules prohibiting including that information in public records), this will effectively eliminate the reporting of civil judgments."). In light of that fact, it was misleading for SBC to tell Ms. Riddell that a judgment would go on the Riddells' credit report. SBC says that it "never threatened to place a judgment on Plaintiffs' credit reports" and denies that it told the Riddells "that a judgment would be entered on their credit report, or that a judgment would create an adverse effect on the Riddells' credit." Dkt. No. 22 at 12. But the call transcripts simply do not bear this out. On May 21, SBC told Ms. Riddell that she could "consent for entry of judgment" and that "[t]he judgment would be placed against both of you." Dkt. No. 17-2 at 47. When Ms. Riddell asked whether "that goes on our credit," SBC responded: "Yes." *Id.* And on May 25, in response to Ms. Riddell's statement that she "[did]n't want a judgment on [her] credit," SBC stated, "Then that settlement would have to be done by June 4th." *Id.* at 54–55. Given the evidence showing that it was extremely unlikely that a judgment would be reported on their credit report at the NCRAs, those statements were misleading at best, and violated 15 U.S.C. §§ 1692e, 1692e(10). However, because the Riddells have not shown that such reporting would be illegal as such, SBC's statement did not violate the FDCPA provision prohibiting it from

threatening "to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

In sum, SBC violated 15 U.S.C. §§ 1692e and 1692e(10) because it used "false representation[s]" or "deceptive means" to attempt to collect a debt on the May 21 and 25, 2021 calls, and violated 15 U.S.C. § 1692e(5) by threatening to obtain a judgment by a date on which it could not legally do so.

### 4.   SBC's Potential Recovery Through Garnishment

The Riddells argue that SBC misrepresented what it would be able to obtain in garnishment if a judgment was entered against the Riddells when it stated that it would be able to garnish 20 percent of "financial household income" despite the applicable statutes only providing for garnishment of 20 percent of disposable earnings. Dkt. No. 18 at 4–5, 16 n.12. The Riddells fail to show that SBC materially misrepresented what it would be able to obtain in garnishment.

Washington law provides that 80 percent of a consumer debt collection defendant's disposable earnings are exempt from garnishment, and defines "disposable earnings" as "that part of earnings remaining after the deduction from those earnings of any amounts required by law to be withheld." Wash. Rev. Code §§ 6.27.150(4)(b); 6.27.010. SBC suggests that the statutory definition requiring deduction of "amounts required by law to be withheld" means that "disposable earnings" are equivalent to after-tax income. *See* Dkt. No. 22 at 3; *Bour v. Johnson*, 864 P.2d 380, 381 (1993) (calculating disposable earnings under Wash. Rev. Code § 6.27.150 by "subtracting federal taxes and social security"). SBC submits that, based on the information Ms. Riddell provided on the phone, Mr. Riddell's monthly income would be $6,720 a month, resulting in an estimated $5,555 in "disposable earnings." Dkt. No. 22 at 3. Twenty percent of that amount would be $1,111, or just over the $1,100 amount that SBC represented to Ms. Riddell that it would get if it "proceeded into garnishment" based on Mr. Riddell's income. Dkt. No. 17-2 at 50–51.

The Riddells do not contest these calculations or otherwise address the issue in their reply. *See generally* Dkt. No. 24. Indeed, in their motion for summary judgment, the Riddells are circumspect about whether there was an FDCPA violation here at all: they say SBC's representation that it would be able to garnish 20 percent of "financial household income" "may or may not independently violate the FDCPA." Dkt. No. 18 at 16 n.12. Although SBC's use of the term "financial household income" was vague, the potential for any material misunderstanding is absent when SBC communicated a dollar figure that was substantially accurate. The Riddells thus fail to establish an FDCPA violation based on SBC's representations regarding garnishment.

5. SBC's Written Offer of Settlement

The Riddells argue that the settlement agreement SBC proposed to them was misleading because it was an unenforceable "sham 'agreement'" that lacked consideration. Dkt. No. 18 at 17; Dkt. No. 19 at 4. Consideration is "any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange." *Labriola v. Pollard Grp., Inc.*, 100 P.3d 791, 793 (Wash. 2004) (quoting *King v. Riveland*, 886 P.2d 160, 164 (Wash. 1994)). The Riddells argue that "SBC was quite clear that it was making no concessions, so [it] was directing Plaintiffs to sign an unenforceable agreement." Dkt. No. 18 at 17. They go on to urge that SBC's "ongoing use of the word 'settlement' is itself misleading, not only because it implies that there is some measure of bargained-for exchange, but because that's not what it is." *Id.* at 17 n.13.

The Riddells' argument lacks merit. The resolution of a legal dispute is sufficient consideration to form a contract. The Riddells argue that SBC was not sacrificing anything it claimed a right to: "All of the benefits would accrue to SBC, without any disadvantages." Dkt. No. 19 at 4. But in a settlement, "the real consideration to each party" is "not the sacrifice of the right, but the settlement of the dispute." *United Truck Lines v. Employers Mut. Cas. Co.*, 268 P.2d 1014, 1016 (Wash. 1954); *see also Sweitzer v. JRK Residential Grp., Inc.*, No. 20-5849-RJB, 2020 WL

1   6147014, at *2 (W.D. Wash. Oct. 20, 2020) ("[I]n entering the Agreement, both the Plaintiff and

2   [defendant] agreed to give up the right to resolve their disputes with one another in court," and

3   "[t]his forbearance is independent consideration by [defendant]."). SBC was in fact offering to

4   give up something here: its continued prosecution of its litigation against the Riddells, including

5   its claim for attorney's fees that had not yet been reduced to judgment. There is no FDCPA

6   violation based on the alleged unenforceability of SBC's proposed settlement agreement.

7         6.   <u>SBC's Dismissal of the State Court Action</u>

8         The Riddells also fault SBC for refusing to dismiss its lawsuit weeks after they had already

9   paid in full (a payment that SBC admits "did, in fact, 'resolve the lawsuit'"). Dkt. No. 17 at 15;

10   Dkt. No. 18 at 18. Although SBC received the Riddells' payment on June 28, 2021, SBC has a

11   "standard policy" of "allow[ing] the complaint to lapse for lack of prosecution," which it claims

12   reduces the legal fees associated with its debt collection activities (and thus the fees that would be

13   passed on to debtors such as the Riddells). Dkt. No. 17-2 at 7. Accordingly, SBC had already

14   marked the Riddells' account as resolved and had no further plans to continue with debt collection

15   activity, but it had no intention of dismissing the lawsuit. *Id.*; Dkt. No. 17 at 15.

16         Ms. Riddell called SBC on July 15, 2021 to figure out why the case had not been dismissed.

17   Dkt. No. 18-3 at 5. When SBC explained that it "just allow[s] the case to get dismissed for want

18   of prosecution and because otherwise it would be more money," Ms. Riddell insisted that SBC

19   should dismiss the case. *Id.* SBC reiterated its refusal, and Ms. Riddell ended the call. *Id.* at 6. SBC

20   then moved for dismissal without prejudice the following day, and the court entered dismissal

21   thereafter. Dkt. No. 17-2 at 41–42; *SB&C, Ltd.*, No. C21-00591, at 1. The Riddells allege that SBC

22   failed to serve them and that it was improper for SBC to dismiss without prejudice. Dkt. No. 18 at

23   18; Dkt. No. 18-1 at 6; *see also* Wash. Civ. R. Cts. Ltd. Jurisdiction 5(a) (requiring "every written

24   motion other than one which may be heard ex parte" to be served upon each of the parties). SBC

acknowledges that its dismissal was "ex parte," Dkt. No. 22 at 16, and neither party suggests that SBC's motion could be heard ex parte.

However, the Court cannot find that SBC's conduct was unfair or unconscionable for purposes of 15 U.S.C. § 1692f, or that SBC made a false, deceptive, or misleading representation to the Riddells in violation of 15 U.S.C. § 1692e. On the July 15 phone call, SBC accurately represented its intent not to dismiss the case. And after Ms. Riddell asked for dismissal, SBC did in fact move for dismissal shortly thereafter. Courts have declined to find FDCPA liability in similar circumstances. *See Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 695 (S.D.N.Y. 2019) (finding that Plaintiff failed to explain "how Defendants' . . . failure to report the discontinuance of the lawsuit [to credit reporting agencies] constitutes a violation of the FDCPA."); *Ugarte v. Sunset Constr., Inc.*, No. 8:07-CV-735-T-23EAJ, 2008 WL 4723600, at *3 (M.D. Fla. Oct. 21, 2008) ("Plaintiff did not provide any evidence that the [defendants'] decision to continue the state lawsuit was a violation of the FDCPA[.]"). The Riddells cite to no authority finding otherwise.

### 7.   SBC's Bona Fide Error Defense

SBC asserts a bona fide error defense on one issue: its statement to Ms. Riddell that she would have to pay SBC by June 4th "to be able to do a settlement instead of it going to judgment," even though the Riddells did not have to file an answer until June 9. Dkt. No. 22 at 18–21; *see* Dkt. No. 17-2 at 52. The Court finds that even if SBC could establish a bona fide error defense as to its use of an incorrect date, it would be inconsequential with respect to SBC's FDCPA liability because its misrepresentations to the Riddells went beyond its use of an incorrect date.

The FDCPA provides a "narrow exception to strict liability" for bona fide errors. *Clark*, 460 F.3d at 1177. "A debt collector may not be held liable . . . if [it] shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding

1   the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

2   A defendant asserting a bona fide error defense must establish that (1) it violated the FDCPA

3   unintentionally, (2) the violation resulted from a bona fide error, and (3) it maintained procedures

4   reasonably adapted to avoid the violation. *McCollough*, 637 F.3d at 948.

5        Setting aside the significant shortcomings in SBC's submissions with respect to this issue,

6   *see* Dkt. No. 24 at 11, and assuming for the sake of argument that the employee's mistake was

7   inadvertent,[6] SBC could establish the elements of a bona fide error defense with respect to its use

8   of the June 4 date. SBC has submitted evidence that suggests it maintains procedures that are

9   reasonably adapted to avoid the error that occurred here. Specifically, "SB&C maintains a

10  computer program which calculates the time that debtors have to respon[d] to complaints," and

11  "the date of service was properly entered, and the computer program properly calendared the

12  deadline[.]" Dkt. No. 22 at 19–20; *see also* Dkt. No. 23 at 3. Moreover, when one of SBC's

13  employees "discuss[es] the debt with a debtor, [its] procedures require that the SB&C employee

14  have the account up so that they may review all relevant information when discussing the debt

15  with the debtor." Dkt. No. 23 at 3. Such procedures should ordinarily be sufficient to avoid the use

16  of incorrect dates in communication with a debtor, even though in this instance they did not. *See*

17  *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008) ("The procedures were not as elaborate

18  as those in some cases that have upheld a bona fide error defense, but the error to be avoided in

19  this case was not complex.").

20

---

21  [6] The Riddells take issue with the admissibility of SBC's theory and evidence regarding its bona fide error defense.
    *See* Dkt. No. 24 at 11. Indeed, the declaration of SBC's CEO attests to facts regarding which he appears to lack

22  personal knowledge. Dkt. 23 at 3 (stating that "our employee inadvertently" provided an incorrect answer deadline to
    Ms. Riddell—without indicating personal knowledge that the statement was inadvertent). In addition, SBC failed to

23  disclose its bona fide error theory in discovery. Dkt. No. 18-3 at 10–11. Federal Rule of Civil Procedure 26(e)(1)
    requires parties to "timely" supplement their interrogatory responses if the responses are either incomplete or incorrect,
    and Rule 37(c) requires courts to preclude a party from introducing evidence or theories not disclosed pursuant to

24  Rule 26(e) unless the party can show that its violation of Rule 26 was either harmless or substantially justified. Fed.
    R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

1    But even assuming that SBC could establish a defense to liability under 15 U.S.C. §

2    1692e(5), the defense would only apply to its use of the incorrect date, and as the Court explained

3    above, SBC's communications misrepresented the choices available to the Riddells and the

4    consequences for their credit, and whether SBC identified the date as June 4 or June 9 is immaterial

5    to this result. SBC thus remains liable under 15 U.S.C. §§ 1692e, e(5) and e(10).

6    **C.    Whether SBC Is Liable Under the CPA**

7    The Riddells move for summary judgment as to liability on their state law claims under the

8    CPA and WCAA, arguing that SBC's alleged violations of the WCAA are per se violations of the

9    CPA. Dkt. No. 1-1 at 7–9; Dkt. No. 18 at 20–23. To establish a CPA claim, a plaintiff must show

10   that a defendant engaged in (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3)

11   impacting the public interest, (4) an injury to her property, and (5) legal causation. *Hangman Ridge*

12   *Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). "A *per se* CPA

13   claim lets a plaintiff satisfy the first three parts of this test by proving a predicate violation of 'a

14   statute that contains a specific legislative declaration of public interest impact.'" *Frias v.*

15   *Patenaude & Felix APC*, No. C20-0805-JCC, 2022 WL 136816, at *6 (W.D. Wash. Jan. 14, 2022)

16   (quoting Wash. Rev. Code § 19.86.093(2)). The WCAA is one such statute. *See* Wash. Rev. Code

17   § 19.16.440; *Panag v. Farmers Ins. Co.*, 204 P.3d 885, 897 (Wash. 2009) (en banc); *accord*

18   *Weinstein v. Mandarich Law Grp., LLP*, 798 F. App'x 88, 91 (9th Cir. 2019) ("[V]iolations of the

19   WCAA are per se violations of the state consumer protection law."). Courts have likewise held

20   that a violation of the FDCPA constitutes a per se violation of the CPA. *See Sims v. Midland*

21   *Funding LLC*, C20-1230-TSZ, 2021 WL 1546135, at *5 (W.D. Wash. Apr. 20, 2021); *Collins v.*

22   *Seterus, Inc.*, No. C17-0943-JCC, 2019 WL 1254878, at *7 (W.D. Wash. Mar. 19, 2019).

23   The Court finds that the first three elements of the *Hangman Ridge* test are satisfied by the

24   same conduct the Court identified as violating the FDCPA above. The Riddells also satisfy the

injury and causation elements.

       1.      <u>The First Three Elements of the CPA</u>

The Riddells allege that SBC violated the WCAA, Wash Rev. Code §§ 19.16.250(16) and (21), by the same conduct that violated the FDCPA. Dkt. No. 18 at 21–22 ("[T]he same offending behavior happens to overlap (and violate) several statutes. . . . [SBC] violated the WCAA upon each violation."). The WCAA is Washington's "counterpart to the FDCPA." *Panag*, 204 P.3d at 897. Like the FDCPA, it "prohibits collection agencies from making false representations as to the legal status of a debt, threatening the debtor with impairment of credit rating, attempting to collect amounts not actually owed, or implying legal liability for costs not actually recoverable, such as attorney fees or investigation fees, among other practices." *Id.* Section 19.16.250(16) of the Revised Code of Washington ("Subsection 16") prohibits a debt collector from threatening to take any action against the debtor which it cannot legally take at the time the threat is made. Section 19.16.250(21) of the Revised Code of Washington ("Subsection 21") prohibits the collection, or attempted collection, of any amounts not authorized by law.

As the Court concluded above, SBC violated the FDCPA, 15 U.S.C. §§ 1692e, 1692e(2), (10), by using "false representation[s]" or "deceptive means" to attempt to collect a debt on the May 21 and 25, 2021 calls, violated 15 U.S.C. § 1692f by seeking fees for work it did not do, and violated 15 U.S.C. § 1692e(5) by threatening to "go[] to judgment" by a date on which it could not legally do so. This conduct establishes a per se violation of the CPA. *See Sims*, 2021 WL 1546135, at *5; *Collins*, 2019 WL 1254878, at *7. The rest of SBC's conduct did not violate either the FDCPA or the WCAA, and cannot be the basis for CPA liability.

In defense, SBC argues that Subsection 16 does not apply to its conduct and that it has a "good faith" defense on the first element of the *Hangman Ridge* test. Dkt. No. 22 at 21–29. Neither of these arguments succeeds. SBC threatened to take action which it could not legally take at the

time of the threat when it represented to the Riddells that the case would "go[] to judgment" if they did not settle with SBC by June 4, which was not possible since a default judgment would not have been possible until at least June 18. Dkt. No. 17-2 at 52; Wash. Civ. R. Cts. Ltd. Jurisdiction 6(d), (e). Although SBC argues that Subsection 16 does not apply to conduct a debt collector actually takes, as opposed to merely threatening to take, Dkt. No. 22 at 24, SBC is liable for misrepresenting to the Riddells the date on which it could obtain a judgment, not for merely pursuing a default judgment. Finally, SBC argues that its conduct was not "threatening," as it "merely informed [the Riddells] of the actions that it was legally entitled to take[.]" Dkt. No. 22 at 25. Neither party cites any case law interpreting the definition of a "threat" under the statute; however, Black's Law Dictionary defines a "threat" as "[a] communicated intent to inflict harm or loss on another or on another's property[.]" "Threat," Black's Law Dictionary (11th ed. 2019). SBC's actions plainly meet this definition: they communicated their intent to obtain a judgment against the Riddells earlier than was legally possible, which would certainly have inflicted a harm or loss on them.

In arguing that it did not violate Subsection 21, SBC relies on the same arguments that it put forth with respect to the FDCPA. For the same reasons its arguments failed with respect to the FDCPA, its arguments fail here too. By attempting to collect as part of the "outstanding balance" or "total balance" fees for work that had not been done as of the May 21 and May 25 calls, SBC violated Subsection 21.

SBC also argues that its actions were "performed in good faith under an arguable interpretation of existing law." Dkt. No. 22 at 26 (quoting *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 299 (1997)); *see also* Dkt. No. 17 at 19–20. However, this defense is unavailable because SBC's violation of the FDCPA establishes a per se violation of the first three elements of the CPA. *See Ten Bridges, LLC v. Midas Mulligan, LLC*, No. C19-1237JLR, 2021 WL 4592385, at *5 (W.D. Wash. Oct. 6, 2021) (because Ten Bridges committed a per se violation

of the CPA, "even if Ten Bridges acted under an arguable interpretation of existing law, it cannot rely on the 'good faith' exception to escape liability"). The same problem defeats SBC's argument that the first element of the *Hangman Ridge* test is not met because it did not engage in an "unfair or deceptive practice." Dkt. No. 22 at 22–23. Even if a good faith defense were available, the Court finds that SBC does not have one for the reasons laid out above.

2.      The Injury and Causation Elements

A per se violation of the FDCPA establishes the first three elements of CPA liability, *Sims*, 2021 WL 1546135, at *5, *Collins*, 2019 WL 1254878, at *7, but a plaintiff must still satisfy the injury and causation elements.

Even a "minimal and temporary" injury may satisfy the fourth element: the expenses incurred in investigating the legality of a defendant's actions or in "[c]onsulting an attorney to dispel uncertainty" are sufficient. *Frias v. Asset Foreclosure Servs., Inc.*, 334 P.3d 529, 538 (Wash. 2014) (cleaned up); *see also Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.,* 170 P.3d 10, 22 (Wash. 2007). Here, the Riddells submit evidence that they incurred expenses in seeking counsel to determine their legal rights and responsibilities. Dkt. No. 18-1 at 6 (noting gas and travel expenses incurred in seeking legal advice about their rights and responsibilities); Dkt. No. 18-2 at 3 (same). This is sufficient to constitute an injury under the CPA. Although SBC argues that an investigative expense that "would have been incurred regardless of whether a violation existed" or that was an expense "incurred for . . . prosecuting a CPA []claim" does not constitute injury, Dkt. No. 22 at 27–28, it points to no evidence suggesting that the Riddells' expenses fall into these categories. Courts interpreting the CPA clearly distinguish between investigative expenses such as the Riddells incurred, and the expenses associated with bringing and maintaining a lawsuit. *See Panag*, 204 P.3d at 902 ("Consulting an attorney to dispel uncertainty regarding the nature of an alleged debt is distinct from consulting an attorney to institute a CPA claim. Although

the latter is insufficient to show injury to business or property, the former is not." (citations omitted)). The other cases SBC cites merely reinforce this point: they affirm, as *Panag* also does, that the costs associated with instituting or litigating a CPA claim cannot create a CPA injury on their own. *See* Dkt. No. 22 at 27–28; *Babrauskas v. Paramount Equity Mortg.*, 2013 WL 5743903, at *4 (W.D. Wash. Oct. 23, 2013) (finding that "the fees and costs incurred in litigating the CPA claim cannot satisfy the injury to business or property element" because plaintiffs "cannot engineer a viable claim through litigation" if they "were not injured *prior to* bringing suit" (emphasis added)). These cases fail to aid SBC's argument because the Riddells furnish unrebutted evidence that they met with legal counsel "to determine their legal rights and responsibilities," Dkt. No. 18-1 at 6; Dkt. No. 18-2 at 3, and SBC points to no evidence that the purpose of the meeting was instead to institute a CPA claim.

A plaintiff's injuries must also be caused by the defendant to satisfy the *Hangman Ridge* factors. Specifically, the "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard,* 170 P.3d 10, 22 (Wash. 2007). The Riddells attest that they sought "legal advice about [their] situation and what [their] rights and responsibilities were" "[a]fter th[e] last phone call" with SBC. *See* Dkt. No. 18-1 at 6; Dkt. No. 18-2 at 3. Indeed, the record reflects escalating exasperation with SBC, ultimately culminating in the Riddells' investigation and related expenses. Dkt. No. 18-1 at 2 (on the first call, Ms. Riddell was "surprised to hear that there was an 'outstanding balance' of $3,621.59"); *id.* at 3 (on the second call, Ms. Riddell was "taken aback when SBC refused to allow [her] to pay by June 15"); Dkt. No. 18-3 at 6 (on the last phone call, Ms. Riddell responded to SBC's statement that it "do[es]n't file dismissals" with "Okay. Then I'll call my lawyer."). The Riddells have established that but for SBC's unfair or deceptive actions, they would not have suffered an injury.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Riddells' motion for summary judgment, Dkt. No. 18, and GRANTS IN PART and DENIES IN PART SBC's motion for summary judgment, Dkt. No. 17, as follows:

1.   Summary judgment as to liability is GRANTED to the Riddells and DENIED to SBC for violations of the CPA, Wash Rev. Code § 19.16.250(16) and (21), and 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f for its statements on the May 21, 2021 and May 25, 2021 phone calls.

2.   Summary judgment as to liability is DENIED to the Riddells and summary judgment is GRANTED to SBC on all other claims under the CPA and 15 U.S.C. §§ 1692e and 1692f.

Dated this 14th day of November, 2022.

Lauren King
United States District Judge

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 32